Filed 10/29/13  P. v. Guzman CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>ANDREW CUEVAS GUZMAN,<br><br>     Defendant and Appellant. | G047504<br><br>(Super. Ct. No. 11NF3668)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Richard M. King, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Lise S. Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

## INTRODUCTION

Defendant Andrew Cuevas Guzman appeals from the judgment entered after a jury found him guilty of forgery, possession of a forged instrument, possession of a fictitious instrument, and second degree burglary. The trial court found Guzman had suffered two prior strike convictions and served two prior prison terms. Guzman contends the trial court erred by admitting evidence of statements he made to police officers before he was read his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*). He also contends the case should be remanded for resentencing in light of the passage of Proposition 36, also known as the Three Strikes Reform Act of 2012, following his sentencing hearing.

We affirm. Guzman was not in custody at the time he made the statements at issue; therefore, *Miranda* did not apply. Guzman has failed to establish any basis for resentencing.

## BACKGROUND

Guzman was charged in an information with forgery, in violation of Penal Code section 470, subdivision (d) (count 1); possession of a forged instrument, in violation of Penal Code section 475, subdivision (a) (count 2); possession of a fictitious instrument, in violation of Penal Code section 476 (count 3); and second degree commercial burglary, in violation of Penal Code sections 459 and 460, subdivision (b) (count 4). (All further statutory references are to the Penal Code unless otherwise specified.) The information alleged Guzman had suffered two prior strike convictions within the meaning of sections 667, subdivisions (d) and (e)(2)(A), and 1170.12, subdivisions (b) and (c)(2)(A). The information also alleged Guzman served two prior prison terms within the meaning of section 667.5, subdivision (b).

The jury found Guzman guilty on all four counts as charged. The trial court found true the prior strike conviction and the prior prison term allegations. The

2

court imposed a total prison term of nine years four months by imposing a six-year term for count 1, a consecutive term of 16 months for count 3, and a consecutive term of two years for Guzman's prior prison terms. The court struck one of the prior strike convictions, stating punishment under section 667, subdivisions (d) and (e)(2) "as a two strike charge is stricken in the interest of justice pursuant to Penal Code section 1385[, subdivision ](c)(1)." The court stayed the execution of sentence on counts 2 and 4 under section 654.

Guzman appealed.

## DISCUSSION

### I.

#### THE TRIAL COURT DID NOT ERR BY ADMITTING EVIDENCE OF STATEMENTS GUZMAN MADE TO POLICE OFFICERS BEFORE HE WAS ADVISED OF HIS RIGHTS UNDER *MIRANDA*.

Guzman contends the trial court erred by admitting into evidence statements he made to police officers before he was advised of his rights under *Miranda*, *supra*, 384 U.S. 436, because they were made during an in-custody interrogation. Guzman's argument is without merit because he was not in custody at the time he made those statements.

#### A.

*Governing Legal Principles*

"*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" (*Oregon v. Mathiason* (1977) 429 U.S. 492, 495; *People v. Ochoa* (1998) 19 Cal.4th 353, 401 ["'Absent "custodial interrogation," *Miranda* simply does not come into play'"].) "An interrogation is custodial when 'a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' [Citation.] Whether a person is in custody is

3

an objective test; *the pertinent inquiry is whether there was '"'a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.'"'* [Citation.] [¶] Whether a defendant was in custody for *Miranda* purposes is a mixed question of law and fact. [Citation.] When reviewing a trial court's determination that a defendant did not undergo custodial interrogation, an appellate court must 'apply a deferential substantial evidence standard' [citation] to the trial court's factual findings regarding the circumstances surrounding the interrogation, and it must independently decide whether, given those circumstances, 'a reasonable person in [the] defendant's position would have felt free to end the questioning and leave' [citation]." (*People v. Leonard* (2007) 40 Cal.4th 1370, 1400, italics added; see *People v. Ochoa*, *supra*, at p. 402 ["'Once the scene is . . . reconstructed, the court must apply an objective test to resolve "the ultimate inquiry": "[was] there a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest"'"].)

In determining whether a defendant was in custody for purposes of *Miranda*, "[t]he totality of the circumstances surrounding an incident must be considered as a whole. [Citation.] Although no one factor is controlling, the following circumstances should be considered: '(1) [W]hether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of the questioning.'" (*People v. Pilster* (2006) 138 Cal.App.4th 1395, 1403; see *People v. Moore* (2011) 51 Cal.4th 386, 395 ["All the circumstances of the interrogation are relevant to this inquiry, including the location, length and form of the interrogation, the degree to which the investigation was focused on the defendant, and whether any indicia of arrest were present"].) "Additional factors are whether the suspect agreed to the interview and was informed he or she could terminate the questioning, whether police informed the person he or she was considered a witness or suspect, whether there were restrictions on the suspect's freedom of movement during the interview, and whether

police officers dominated and controlled the interrogation or were 'aggressive, confrontational, and/or accusatory,' whether they pressured the suspect, and whether the suspect was arrested at the conclusion of the interview." (*People v. Pilster*, *supra*, at pp. 1403-1404.)

B.

*The Evidence Code Section 402 Hearing*

Before trial, Guzman's counsel requested a hearing on the admissibility of evidence of statements Guzman made before he was advised of his rights under *Miranda*. The trial court held an Evidence Code section 402 hearing at which Anaheim Police Officer Ryan Killeen testified; a summary of his testimony is as follows.

On December 9, 2011 about 11:48 a.m., Killeen and Officer Michael Riddell were on duty, working patrol together in a black and white marked police vehicle, when they were dispatched to respond to "a forgery in progress" at a check-cashing store in Anaheim. The officers were informed that the individual who attempted to cash the check in question provided a California driver's license bearing the name "Andrew Guzman."

The officers arrived at the store "within minutes" of receiving the dispatch. They did not activate the lights or siren of their police vehicle. Both officers were in uniform.

Killeen and Riddell entered the store, saw Guzman sitting on a bench near the store's entrance, and engaged him in conversation. During the conversation, the two officers stood about five or six feet in front of Guzman. The officers did not have Guzman stand up or walk anywhere before asking him questions.

Killeen asked Guzman if he was Andrew Guzman; Guzman answered in the affirmative. Killeen asked Guzman "what he was doing inside the business." Guzman said he was trying to cash a check. Killeen asked what the check was for, and Guzman said "for his work." Killeen asked him the name of the company he worked for

5

and Guzman told Killeen he did not know. Killeen asked Guzman what he did for the company. Guzman said, "he had been a driver for about a week." Killeen's questioning took a "[m]aximum" of 30 seconds. Killeen did not further converse with Guzman about the incident or otherwise.

Neither Killeen nor Riddell removed his gun, handcuffs, taser, "ASP," or anything of that nature, during the conversation. Neither officer made any statement "indicating that [Guzman] was under arrest" or that he was not free to leave. The officers did not tell him they wanted him to move to another location. After their conversation ended, Killeen placed Guzman in handcuffs.

C.

*The Trial Court Did Not Err by Admitting Evidence of Guzman's Statements to Killeen and Riddell Because Guzman Was Not in Custody When He Made Those Statements.*

The trial court concluded Guzman's statements to Killeen and Riddell were admissible, finding they were voluntarily made and that a reasonable person in Guzman's position would not have felt that he or she was in custody, or the functional equivalent of custody, at the time the statements were made. The court found the prosecution had laid the appropriate foundation for the admission of the statements Guzman made "prior to the handcuffs being placed on him."

The trial court did not err by concluding that Guzman was not "in custody" for purposes of *Miranda* at the time he made the subject statements to Killeen and Riddell. At the time Guzman made the statements, he had not been placed under arrest; neither officer had told him that he was under arrest or that he was not free to leave. Killeen's questioning of Guzman took a "[m]aximum" of 30 seconds and took place near the front door of a public business; the officers did not ask Guzman to stand up or tell him that they wanted him to move to another location. The ratio of officers in relation to Guzman was only two to one; Killeen alone questioned Guzman and both officers stood

6

five to six feet away from Guzman during that questioning. Killeen's questions were brief and not accusatory in nature. Neither officer displayed any weaponry during the conversation with Guzman. Nothing in the record suggests that the demeanor of the officers was in any way aggressive, confrontational, or accusatory. We find no error in the admission of evidence of Guzman's statements to Killeen and Riddell.

## II.

### GUZMAN IS NOT ENTITLED TO RESENTENCING UNDER PROPOSITION 36.

Guzman contends this court should remand the instant case to the trial court for resentencing in light of the passage of Proposition 36 one month after his sentencing hearing. Guzman's argument is without merit.

Proposition 36 amended sections 667 and 1170.12, effective November 7, 2012, so that an indeterminate term of 25 years to life in prison is applied only where the third strike offense is a serious or violent felony or the prosecution pleads and proves an enumerated factor. (§§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C); *People v. Yearwood* (2013) 213 Cal.App.4th 161, 169-170.)

Proposition 36 also created section 1170.126, which provides a procedure for resentencing "persons presently serving an indeterminate term of imprisonment" under the "Three Strikes" law, "whose sentence under this act would not have been an indeterminate life sentence." (§ 1170.126, subd. (a).) Such a person may file a petition to recall his or her sentence and be sentenced as a second strike offender. (§ 1170.126, subd. (b).) An inmate is eligible for such resentencing if none of his or her commitment offenses constitutes serious or violent felonies and none of the enumerated factors disqualifying an inmate for resentencing under Proposition 36 applies. (§ 1170.126, subd. (e).) Resentencing of eligible inmates may, nonetheless, be refused if the trial court, "in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) Subdivision (g) of

7

section 1170.126 sets forth several factors that a trial court may consider in exercising that discretion.

Here, as the trial court did not impose an indeterminate 25-year-to-life sentence, Proposition 36 does not apply to Guzman's prison sentence—a determinate sentence of nine years four months. Furthermore, the trial court clearly understood its discretion to strike Guzman's prior strike convictions for purposes of sentencing, as the court, in fact, struck one of Guzman's prior strike convictions before imposing sentence. The court explained its exercise of discretion as follows: "I am going to strike one of the strikes, and I'm required to enter into the minutes the reasons why. The reason that the court is exercising its discretionary authority under *People vs. Romero* and Penal Code section 1385 subsection (c) subdivision (1) are the following reasons: First, the nature of the current offense is less serious than other felonies; number two, the current offense is not a violent or serious felony; three, the facts and circumstances of the current case offense do not indicate a greater degree of danger to society. I just wanted to embellish on that a little bit. If this was a residential burglary, I could understand the People's position, but we don't—it's a commercial establishment, somebody attempting to get money through fraud. Next, there was no injury or threat of injury to any person. There was no weapon used in this—in this current offense. Next, the amount of monetary loss was perhaps—I want to use the word, 'small,' but it's to a point where the victims are not asking for restitution. Next, the defendant's strikes do arise out of the same case number, although I have considered that they were two independent actions. And finally, the priors, although the defendant has been to prison, I have taken into account that these convictions occurred in 2004. So for those reasons, the court is—based on the nature and the circumstances of this crime and the defendant's background, that the imposition of a life sentence in this case would be unjust and unwarranted."

DISPOSITION

The judgment is affirmed.


FYBEL, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.